OPINION
PER CURIAM.
An Qing Wu, a native and citizen of the People’s Republic of China, seeks review of a final order of removal entered by the Board of Immigration Appeals (“BIA”). We will deny the petition for review.
I.
Wu, a twenty-six-year-old unmarried male, entered the United States via Mexico on August 7, 2005. The government issued a Notice to Appear the next day, charging Wu as an alien present without being admitted or paroled. Wu conceded removability as charged, and venue over his removal proceeding was transferred, at Wu’s request, from Texas to New Jersey. In proceedings before the Immigration Judge (“IJ”) in New Jersey, Wu applied for asylum, withholding of removal, and protection under the Convention Against Torture (“CAT”). Wu claimed that he suffered past persecution, and feared future persecution, for having disseminated censored news materials over the internet.
In his written asylum application filed May 18, 2006, Wu alleged that he is from Fujian Province, and was in the wholesale seafood and timber business beginning in 2001. In 2003, he allegedly learned from a former schoolmate named Chen how to access “politically censored news” over the internet, including access to websites that were blocked by the Chinese government. After Chen helped Wu install proxy software on his computer to open blocked sites, Wu claims that he began sending censored news to friends, particularly news about government corruption, along with Wu’s background analysis on the corruption. Wu allegedly sent these emails *590 from his home computer or at “web bars” using internet access service cards.
Wu claims that on December 20, 2003, local police detained and interrogated him, and confiscated his computer. The police allegedly discovered the proxy and questioned Wu as to his “source,” which Wu refused to disclose. Wu claims that the police slapped him and released him after three days. Wu’s computer was returned to him.
Wu thereafter ceased sending the emails, and he claims that before Chinese New Year, 2004, a police officer interrogated him as to why he was no longer doing so. One month later, the officer allegedly again questioned Wu, and advised that Wu would “have no more problems” if he identified the person who taught him to install and access the proxy. The officer allegedly threatened to arrest Wu and harm his business. Wu claims that he refused to cooperate. In the two months that followed, Wu’s business allegedly “was going down,” and he was told by a wholesaler that the police had instructed him not to sell timber to Wu. Wu then decided to leave China.
On April 15, 2004, Wu claims that he was arrested in Inner Mongolia, China, as he was making his way to Russia. Wu allegedly was detained, and an officer hit Wu with his hands. An officer also allegedly threw a water glass at Wu, with the glass breaking on Wu’s shoulder and falling to the ground. The officer pushed Wu to the ground, and Wu’s right elbow was cut by the broken glass. Wu claims that he did not receive proper medical treatment for the wound. On April 30, 2004, after Wu had spent fifteen days in detention, Wu’s father paid bail of 20,000 RMB, and Wu was released.
After returning home, Wu claims that he was interrogated by local police, who threatened him and interfered with his business. Wu again decided to leave China, which he did in March 2005, arriving in the United States in August 2005.
Wu testified before the IJ on September 29, 2006. He stated that he left China because, inter alia, “[t]here were limitations set on me, and I was tortured.” Wu testified that the police discovered his activity of spreading censored news, leading to his interrogation on December 20, 2003, when he was slapped in the face. Among other things, Wu recounted his alleged first attempt to leave China, his arrest in Inner Mongolia, and his fifteen-day detention, when he allegedly suffered the injury to his right elbow. Wu testified that he was “under surveillance” after he returned from Inner Mongolia, and that local police contacted Wu three times in an effort to discover his source. Wu stated that if he returned to China, “they would monitor me and my personal freedom would be limited and they might torture me again and send me back to the policeman again.”
The IJ rendered an oral decision in which he rejected Wu’s credibility and denied all relief. The IJ found Wu’s testimony “too confusing” to meet his burden of proof, and that Wu had omitted important details and information regarding his claims. The IJ noted that Wu failed to reveal any particular feelings regarding government corruption in China, failed to submit copies of the purported emails he had sent, and submitted “virtually no corroboration” for his testimony. While acknowledging the existence of a scar on Wu’s arm, the IJ could not conclude from the evidence that the injury resulted from torture or persecution. The IJ also found that the December 2003 and April 2004 incidents in police custody do not rise to the level of past persecution. The IJ found Wu’s testimony “for the most part vague and difficult to understand and not compelling at all,” and noted that Wu “appeared throughout the hearing to be un *591 comfortable, to be nervous and to not have any narrative string to his testimony.” The IJ cited in particular Wu’s inconsistent statements regarding the police activity after he returned from Inner Mongolia. Finally, the IJ observed that, based on information in the State Department Country Report, “it would appear that the actual chance of being jailed for Internet writing is extremely remote,” making it unlikely that Wu was arrested for internet usage. The IJ also found no evidence that Wu would more likely than not be tortured upon return to China.
The BIA dismissed Wu’s appeal, holding that the IJ’s adverse credibility determination was not clearly erroneous. The BIA agreed with the IJ that Wu’s “vague” testimony, combined with a lack of corroborating evidence, failed to show that he had engaged in dissentient activity over the internet. On the basis of the reasons stated in the IJ’s decision, the BIA affirmed the conclusions that Wu failed to offer credible testimony to establish past persecution, a well-founded fear of future persecution, or a likelihood of torture. Wu timely filed his petition for review in this Court.
II.
We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the BIA’s final order of removal. When, as here, the BIA issues its own decision but affirms substantially on the basis of the IJ’s stated reasons, we review both decisions. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We must uphold the factual determinations made during administrative proceedings if they are “supported by reasonable, substantial, and probative evidence on the record considered as a whole.” INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). We apply this substantial evidence standard to review an adverse credibility determination. Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir.2005). An adverse credibility determination must be supported by sufficient, cogent reasons. Id. at 434. An adverse credibility determination that is supported by sufficient evidence is upheld unless “ ‘any reasonable adjudicator would be compelled to conclude to the contrary.’ ” Chen, 376 F.3d at 222 (quoting 8 U.S.C. § 1252(b)(4)(B)).
Under the provisions of the REAL ID Act, which the BIA correctly noted are applicable here, the IJ, after “[cjonsidering the totality of the circumstances, and all relevant factors,” may base an adverse credibility determination
on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant’s or witness’s account, the consistency between the applicant’s or witness’s written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant’s claim, or any other relevant factor.
8 U.S.C. § 1158(b)(l)(B)(iii).
Upon a review of the record, we find substantial evidence to support the adverse credibility determination. The IJ primarily noted the inconsistency in Wu’s testimony with regard to events upon Wu’s return from his alleged first attempt to leave China. In his asylum application, Wu stated that the police threatened him and interfered with his business upon return. In his testimony before the IJ, Wu stated that he was put “under surveil *592 lance” and contacted three times by the authorities. After the IJ questioned Wu about his failure to mention in his testimony that the police had threatened him and his business, Wu then stated that he was interrogated three times at the police station and told that he would be imprisoned if he refused to reveal his source. The inconsistencies and omissions in Wu’s statements about these important events— events that allegedly compelled Wu to attempt a second departure from China— provide. record support for an adverse credibility finding. Furthermore, given the absence of corroborating record evidence for Wu’s alleged political opinions and internet activities, Wu’s vague testimony about his political intentions and internet activities, and the IJ’s expressed concerns about Wu’s demeanor, we cannot conclude that any reasonable adjudicator would be compelled to find Wu’s testimony credible.[1]
Wu argues that the IJ and BIA erred by “ignoring” Wu’s documentary evidence reflecting his arrest in Inner Mongolia for an illegal border crossing and treatment for his elbow injury. While Wu argues that this evidence corroborated his story, it does not appear from the record that the IJ or BIA overlooked this evidence. Indeed, the BIA expressly observed that the IJ “specifically noted” and “considered” this evidence. Moreover, as the BIA explained, even if the IJ overstated Wu’s evidentiary omissions in concluding that there was no corroboration for Wu’s claimed first attempt to leave China, there is substantial evidence in the record to support the IJ’s ultimate rejection of Wu’s claims, including the inconsistencies in Wu’s testimony, the absence of corroboration for his alleged political opinions and internet activities, and the IJ’s adverse perception of Wu’s demeanor.
Finally, Wu challenges the denial of his claim for CAT relief.[2] To be eligible for a withholding of removal under the CAT, Wu had to show that it is more likely than not that he will be tortured in China. See 8 C.F.R. § 208.16(c)(2); Sevoicm v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir.2002). Torture is defined as the intentional infliction of severe pain or suffering “by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.” 8 C.F.R. § 208.18(a)(1).
Wu argues that he was tortured in April 2004 because the police threw him to the ground, resulting in the cut on his arm, and failed to provide prompt medical treatment for the injury. Wu claims that this “past torture” suggests a probability that he will be tortured again. The record, however, reflects substantial evidence for the IJ’s finding that the April 2004 incident does not rise to the level of past persecution. See Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir.1993) (defining persecution as “threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom,” and explaining that persecution “does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional”). Wu has not shown that he will be singled out for torture upon return to China, and the record does not compel a conclusion contrary to the one reached by the IJ and BIA.
*593 hi.
We have considered Wu’s remaining arguments but find them without merit and in need of no discussion. For the foregoing reasons, we will deny the petition for review.

. We note that, although this Court has not yet addressed whether the new credibility standard of 8 U.S.C. § 1158(b)(l)(B)(iii) is consistent with due process, we are satisfied that Wu’s challenge to the BIA's adverse credibility finding would fail under the pre-REAL ID Act standard, as well.

. Wu does not argue his claim for mandatory withholding of removal in his brief to this Court, and thus we deem that issue waived and do not address it.